(Comfort *v.* Leland.)

---

[PHILADELPHIA, JANUARY 8, 1838.]

## COMFORT *against* LELAND.

### IN ERROR.

1. Where an act of incorporation provided that each member should pay to the trustees, for the time being, of a certain corporation his proportion of certain expenses, and declared that the trustees should have power to sue for and recover the same, it was *held* that the action against a member for his proportion of the expenses, ought to be brought in the name of the trustees, and that they might declare both in their natural and official capacities.

2. Where an act of incorporation of a certain meadow company authorised the assessment of certain rates upon each member, "his heirs and successors," in respect to his land; it was *held*, in an action against a person who had purchased the land of one of the *original corporators, that the books of the corporation were admissible in [\*82] evidence against him to prove the amount of the assessment, and his proportion thereof.

3. The 4th section of the act of 20th March 1810, which provides that ap-

---

* See 6 Barr, 186; 9 Id. 174.         † See *post*, 400.

(Comfort *v.* Leland.)

peals from the decisions or orders of *two* justices, shall be decided on the facts and merits only, was intended to apply to the case of an appeal from the judgment of *one* justice, in a civil suit or proceeding.

4. Where an action was brought before a justice of the peace in the name of A. B. " Treasurer of the Penn's Manor Meadow Company," it was *held*, that the plaintiff had a right on the appeal to amend by substituting the trustees of the company as plaintiffs, so as to conform to the act of incorporation ; and that it was error to refuse the amendment.

THIS was a writ of error to the Court of Common Pleas, of the county of Bucks, to remove the record of an action brought by Moses Comfort, treasurer of " The Penn's Manor Meadow Company," against Joseph Leland.

The case came into the court below, by appeal from the judgment of a justice of the peace, in an action brought by the same plaintiff against the same defendant, to recover the sum of $79 19, the amount of a tax alleged to be due by the defendant to the Penn's Manor Meadow Company, in respect to the land held by him in that meadow, subject to the assessments laid by the authority of the Company.

" The Penn's Manor Meadow Company," was incorporated by an act of assembly passed on the 4th of March 1815. The first section declared, that certain persons therein named, and their successors, should thereafter be a body politic and corporate, &c. The 2d section declared, that each member, his heirs and successors, should pay to the trustees for the time being his proportion of expenses incurred, &c. The 4th section provided for the annual appointment of trustees, and authorised the making of by-laws, &c. The 5th section, authorised the trustees to make an assessment of the expenses of making and keeping up the dykes, and declared that the said trustees should have power to sue for and recover the same.

In the Court of Common Pleas, the plaintiff declared for money had and received, &c. ; and the defendant pleaded non assumpsit; which declaration and plea were in accordance with the rules of the said court, regulating appeals from justices of the peace. Afterwards on the 12th of December, 1836, a new declaration was filed, in the names of the trustees of the Penn's Manor Meadow Company.

The issue came to be tried at December term 1836, when, after the jury had been empannelled, but before they were sworn, the plaintiff's counsel moved to substitute on the record as plaintiffs, [*83] in *the room of Moses Comfort, Jun. treasurer of the Penn's Manor Meadow Company, the names of Samuel Crozer, Robert Crozer, and William Taylor, " trustees of the Penn's Manor Meadow Company," on the ground of informality in bringing the suit before the justice. The court, however, refused to allow the amendment. The counsel for the plaintiff

(Comfort *v.* Leland.)

thereupon filed a paper of record in the cause, suggesting that the suit had been informally brought before the justice, in the name of Moses Comfort, treasurer of the Penn's Manor Meadow Company, and substituting on the record the names of Samuel Crozer, Robert Crozer, and William Taylor, trustees of the Penn's Manor Meadow Company.

The jury were then sworn or affirmed, to try the issue between Moses Comfort, Jun., treasurer of the Penn's Manor Meadow Company, and Joseph Leland. The counsel for the plaintiff to maintain the issue on his part gave in evidence the act of incorporation of the Penn's Manor Meadow Company.

And for the purpose of showing that the defendant was the successor of Charles Ellet, one of the corporators named in the act, the plaintiff gave in evidence a deed, acknowledged the twenty-ninth day of December, A. D. 1823, by which the said Charles Ellet and wife, conveyed to the said Joseph Leland, his plantation or tract of land, situate in Pennsbury Manor, Falls township, Buck county, containing one hundred and thirty-five acres.

The plaintiff further proved by the testimony of one George Ivins, that the said Charles Ellet never owned any other property in Falls township than the tract sold to Leland.

The plaintiff having further proved by two witnesses that the subject-matter of dispute in the present trial was the same as in the suit before the justice, called Samuel Croasdale, who being affirmed testified that he was " a member of the corporation of Penn's Manor Meadow Company, and that certain books exhibited to him were the minute book, and the account book, of the Penn's Manor Meadow Company, and that there were no other books containing the proceedings of the company."

The counsel for the plaintiff then offered in evidence the said account book of the Penn's Manor Meadow Company, and also the minute book of the Penn's Manor Meadow Company, for the purpose of showing the amount of tax assessed by the corporation upon the land held by Joseph Leland; and also for the purpose of showing by the proceedings of the said corporation, that Joseph Leland the defendant, had acted, and was recognised, as a corporator. *The defendant's counsel having ob-  [*84] jected to the admission of the said books in evidence, the Court decided that the books of the corporation were not evidence against Joseph Leland; and that neither of the books offered could be read in evidence for the plaintiff, and rejected the same: to which opinion the counsel of the plaintiff excepted.

(Comfort *v.* Leland.)

After the rejection of the corporation books, no further testimony being offered by the plaintiff, the jury returned a verdict in favour of the defendant, and the plaintiff took a bill of exceptions ; and having sued out a writ of error, made the following assignment of errors.

"1. The Court erred in refusing the plaintiffs motion to correct the informality in bringing the suit before the justice, in the name of the treasurer of the Penn's Manor Meadow Company.

2. The Court erred in rejecting the corporation books of the Penn's Manor Meadow Company, to wit, the account book and the minute book of the company, as proved by the testimony of Samuel Croasdale one of the corporators."

Mr. *Ross,* for the plaintiff in error, cited, *Lyon* v. *Chalker,* (2 Watts, 14) ; *Vandeleur* v. *Graham,* (2 Watts, 131) ; *Bratton* v. *Seymour,* (4 Watts, 320).

Mr. *Miles,* contra, cited, *Stehley* v. *Harp,* (5 Serg. & Rawle, 544) ; *Wilson* v. *Wallace,* (8 Serg. & Rawle, 53) ; *Cline* v. *Gothart,* (2 Penn. Rep. 490) ; *Kendal* v. *Lee,* (2 Penn. Rep. 485).

KENNEDY. J., delivered the opinion of the court.——

The question raised by the first error assigned is, ought the court below to have permitted the plaintiff's counsel to amend by introducing, both in their natural and official capacities, the trustees of "The Penn's Manor Meadow Company," upon the record, as plaintiff's in the action, instead of "Moses Comfort, treasurer," of the said company, in whose name it was brought before the justice. This question seems to present two others,— first. Was the amendment proper and necessary, in order to bring before the court and jury the real cause of action and the merits of the claim sued for ? And second. If so, was the court, under the act of assembly, bound to allow it ? At first I was inclined to think, that the action ought to have been brought in the. corporate name of · the company, to wit, "The Penn's Manor Meadow Company," and therefore the amendment asked for would not have helped the plaintiff. But upon a more close and attentive reading of the act of assembly incorporating the company, upon the authority of which, [*85] *it is claimed that this action was brought, and that the defendant is liable to pay, I have come to the conclusion that, if the cause of action, for which the suit was brought, does exist, it can only be sustained in the name of the trustees of the company ; and that they may declare both in their natural and official capacities. This action, it must be observed, was brought

(Comfort *v.* Leland.)

to recover from the defendant his proportion of the expenses incurred, as it is alleged, by the trustees, in ditching and draining the Penn's Manor Meadow; which being, as it would seem, at least in part, a marsh, was the occasion of the company, as the owners thereof, being incorporated, for the purpose of reclaiming it from that state. By the second section of the act incorporating the company, it is enacted, "that each member of the company, his heirs and *successors*, shall *pay to the trustees for the time being* his, her, or their proportion of all expenses incurred or to be incurred by the trustees thereafter named and their successors;" and again in the fifth section it is provided, "should any member neglect or refuse to make payment, the *said trustees shall have power to sue for and recover the same*, and all other moneys which shall become due to the company, as other debts of the same amount are recoverable." Thus it appears that the money in question, if due by the defendant, is made expressly payable to the trustees of the company; and in case of refusal or neglect to pay it, they are also expressly authorised to sue for and recover it. If the act had not specified or shown in whose name the action should be brought for the recovery of the money here, it ought unquestionably to have been instituted in the proper corporate name of the company, that is, "The Penn's Manor Meadow Company." *Bodwic* v. *Fennell*, (1 Wils. 235); 2 Kyd on Corp. 157; Ang. & Ames on Corp. 203. But the act here may very fairly be construed as having directed that the suit shall be brought in the name of the trustees of the company for the time being. In *The Chamberlain of London's Case*, (5 Co. 63,) which was an action of debt, brought in the name of the chamberlain of the city of London, for a penalty incurred by the violation of an ordinance made by the Mayor, Aldermen, and Commonalty of the city, it was held that the action was well brought, and might be maintained in the name of the chamberlain, because the ordinance directed that "for such forfeiture the chamberlain of the city of London for the time being should have an action of debt;" and he being the public officer of the corporation for debts, the appointment of him to bring the action was good. So in *Hollings* v. *Hungerford*, determined by the King's Bench in 3 Geo. 1, where the plaintiff, as chamberlain of Bristol, brought an action of debt for the recovery of a penalty of £200, imposed by a by-law, on every man who should be chosen a common councilman, and should not appear within a certain time and take the office upon him, it was held that the action was well brought, because "the chamberlain," necessarily meant "the treasurer" *of the corporation; that he was not a stranger, but a part of the corporation; and there- [*86] fore, the court would take notice of the relation there was between

(Comfort *v.* Leland.)

them: cited in *Bodwic* v. *Fennell*, (1 Wils. 235), and in Kyd on Corp. 158. I also refer to the case of *Harris* v. *Wakeman*, (Sayer's Rep. 254,) not merely to show that the suit was properly brought in the name of the chamberlain of the city of Worcester, because the ordinance imposing the penalty for which the action was brought in that case, directed in express terms that it should be brought *in the name* of the chamberlain, but to show, as well as in the case of *Hollings* v. *Hungerford*, that the chamberlain sued both in his natural and official capacity. But in the case of *The Master Wardens and Commonalty of Feltmakers* v. *Davis*, (1 Bos. & Pull. 98,) the by-law imposing the fine, for which the action was brought, directed that it should " be *paid to the Master and Wardens for the time being*, for the use of the Master, Wardens and Company;" and it was ruled by the Court, that the action ought to have been brought *in the name* of the *Master* and *Wardens* alone as the fine was made *payable to them*, though for the use of the corporation, that is, the Master, Wardens and Company, in whose name the suit was actually brought. Eyre, Chief Justice, in delivering the opinion of the Court, says, "The Master and Wardens may bring the action, and apply the money to the use of the company. They may sue in the same manner as the chamberlain of London does for the corporation of London; and they would probably *declare* both in their *natural* and *official* capacities." This last case, in terms, meets the one before us more fully than the prior, but in principle is the same with them; and all go to show that the action here ought to have been brought in the name of the trustees of the company, and that they might have declared both in their natural and official capacities. This case may, perhaps, be considered still stronger in favour of the suit being brought in the name of the trustees than the cases referred to, because the money claimed here, if due from the defendant, is directed by the act of incorporation itself, and by the very highest authority in the state, to be *paid to the trustees* of the company for the time being, which has been held sufficient in the cases cited to enable the officers of the respective corporations to whom the moneys therein claimed were directed to be paid, to maintain actions in their own names for the recovery thereof, though only directed to be so paid, by a by-law or ordinance of the corporation, who certainly could not give the penalty of a by-law to a mere stranger, as, for instance, " *to any one who shall sue for the same*," though most unquestionably the legislature could. *Bodwic* v. *Fennell*, (1 Wils. 233, 236, 237); *Hollings* v. *Hungerford*, and *Ellington* v. *Cheney*, there cited; *Totterdell* v. *Glazby*, (2 Wils. 266); 2 Kyd on Corp. 158–9; Angell & Ames on Corp. 202. And the authors of this last work lay it down as a conclusion from the authorities

(Comfort *v.* Leland.)

cited above, in page *203, that "if the by-law, as it may, [*87] limits the penalty to be *recovered* by the chamberlain or treasurer of the corporation, for the use of the corporation, the action must be brought *in the name* of the chamberlain or treasurer." Here then, in the present case, it is not only limited that the money shall be paid to the trustees, but that they shall have power to sue for and recover the same for the use of the corporation. It is plain, therefore, that without such amendment being first granted by the court below, as was asked for by the counsel of the plaintiff, the merits of the claim in question could not be inquired into and tried according to the rules which govern trials in court.

This being the case, the next question is, were the court bound to allow it? The fourth section of the act of assembly, passed the 20th of March, 1810, for amending and consolidating, with its supplements, the act entitled, "An act for the recovery of debts and demands, not exceeding one hundred dollars, before a justice of the peace, &c." Purd. Dig. (by Stroud,) 581, after declaring in what manner and when appeals shall be taken from the judgments of justices of the peace to the Courts of Common Pleas, provides first, "that if the party appellant shall enter bail to appeal within twenty days after judgment being given as aforesaid, such appeal shall be effectual, in case such party appellant shall file the transcript of the record of the justice in the prothonotary's office, on or before the first day of the next term of the Court of Common Pleas of the proper county, after entering such bail as aforesaid." And then it is provided again, "That upon any *such appeal* from the decision, determination, or order of *two* justices of the peace to the Court of Common Pleas or Court of Quarter Sessions, in any county, the case shall be decided in such court on *its facts* and *merits only*; and no *deficiency* of form or *substance* in the record or proceedings returned, nor any *mistake* in the form or *name* of the *action*, shall prejudice either party in the court to which the appeal shall be made." In the preceding provisions of the act, it is obvious that the word "*two*" was inserted through mistake, or that something, intended to have been introduced previously, was inadvertently omitted; for there is no previous case of an appeal from the decision of *two* justices of the peace mentioned or provided for in the act; and the previous words "*such appeal*," can have reference therefore to no case of the kind, and can only be made applicable to the appeals previously spoken of in the act, which are appeals from the judgment of a single justice; such as the appeal in the present case is, from the decision of the justice, before whom the action was brought, to the court below. The whole tenor of the act, and the reason of the thing,

(Comfort *v.* Leland.)

show clearly, that the provisions of the act, recited above, were intended to be applied to such cases as the present, at least, and possibly to others. The legislature, sensible that, for want of [*88] legal advice, many errors *and mistakes, not only in regard to matters of form, but of *substance,* would be committed in originating suits· and legal proceedings before justices of the peace, under the extensive jurisdiction thereby given to them; and being also sensible that great delay, inconvenience and expense would necessarily arise therefrom, unless some provision were made, to render a commencement of the suit or proceeding *de novo* on account thereof unnecessary, therefore as it may reasonably be presumed, intended by what they have done to make it the duty of the court to which the case should be removed by appeal, to permit and allow amendments to be made, which should be proper and necessary to enable the Court to inquire into and determine the *cause of action intended* to be sued for before the justice, upon and according to its merits. According to this view of the matter, it was held in *Graham* v. *Vandalore,* (2 Watts, 131,) which was an appeal from the judgment of a justice of the peace to the Court of Common Pleas, that a declaration drawn and filed in the cause, in the name of F. A. Vanderlore, as plaintiff, was good, though the action was brought before the justice in the name of William Piper, *agent* for F. A. Vanderlore; a case substantially the same with the present. The name of the plaintiff was there allowed to be changed, but the same cause of action remained, which was all that was asked for here. The plaintiff being entitled, as we conceive, to have the amendment allowed, which he asked for, under the act of assembly recited above, it was therefore error in the court below to refuse it. *Young* v. *The Commonwealth,* (6 Binn. 88); *Clymer* v. *Thomas,* (7 Serg. & Rawle, 178); *Glazier* v. *Lowry,* (8 Serg. & Rawle, 498); *Maus* v. *Montgomery,* (10 Serg. & Rawle, 192); *Newlin* v. *Palmer,* (11 Serg. & Rawle, 101).*

We also think that the court below erred in rejecting the books of the corporation, which were offered to be read in evidence. They were undoubtedly admissible as evidence for the purpose of showing the amount of the expenses incurred by the trustees of the corporation in ditching and draining the Penn's Manor meadow, and the proportion thereof which the defendant had become liable to pay, as it was alleged by the plaintiffs, by reason of his having purchased and become the owner of the land of Charles Ellet, situate within and forming a part of the said meadow, on account of which Charles Ellet was one of the

* See *post,* 423 ; 7 Watts, 50.

original corporators.  But there is nothing on the record, which goes to show that the books would have been admissible to prove more than this.  It is stated, that in addition to proving the charge against the defendant, they were likewise offered for the purpose of proving that he had acted as a corporator, and was recognized by the company as such.  It is easy to conceive that the books might have shown that he was recognized by the company as a corporator, but it is not quite so easy to imagine how they alone would have shown that he had acted as such, without other proof.  Entries made therein by him, upon their *being proved to be in his handwriting, might have shown [*89] the fact.  But entries made by the company in their books, without his knowledge and consent, could not *per se* be received in evidence, as it appears to me, to prove that he acted as a corporator, or was such.  It is clear that he could not be made a member of the corporation without his consent; and it would therefore be unreasonable to receive as evidence of the fact, things of which it was not made to appear, that he had any previous knowledge and given his assent to.  If, however, it be so, that the defendant has become the purchaser and the owner of the land, on account of which Charles Ellet agreed, and did become one of the original corporators, this would seem to be sufficient to make him the "successor" of Ellet within the meaning of the act of incorporation.  The judgment is reversed and *a venire de novo* awarded.

Judgment reversed, and *venire de novo* awarded.

Cited by Counsel, *post* 422; 1 Watts & Sergeant, 415; 6 Barr, 190; 8 Harris, 427; 11 Id. 330; 2 Ashmead, 321.
Cited in note, 1 Harris, 176.
Cited by the Court, 2 Watts & Sergeant, 168; 1 Harris, 64; 10 Casey, 364.